**In re John Charles VAN FOSSAN, Debtor.**

**Desser AUD and Barbara Van Fossan, Plaintiffs,**

**v.**

**John Charles VAN FOSSAN and A.L. Tenney, Trustee, Defendants.**

**Bankruptcy No. HS 87–302 F.**
**No. CMS 87–1532.**

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Nov. 17, 1987.

Travis Mathis, Arkadelphia, Ark., for Desser Aud.

J. Michael Fitzhugh, U.S. Atty. by Matthew Fleming, Asst. U.S. Atty., Fort Smith, Ark., for U.S. Dept. of Agriculture.

Robert M. Cearly, Jr., Little Rock, Ark., for Barbara Van Fossan.

Dan McCraw, Hot Springs, Ark., for debtor, John Charles Van Fossan.

A.L. Tenney, trustee, pro se.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court are the motions to dismiss filed by the United States of America, through the Farmers Home Administration (FmHA), and A.L. Tenney, Trustee, in the above case. Also before the Court is the motion to dismiss, motion for relief from stay and objection to extension of time to file a plan filed by Desser Aud and Barbara Van Fossan. The motions came on for hearing on November 12, 1987, for resolution of the following issue—whether the Court has jurisdiction over the chapter 12 bankruptcy proceeding filed by the debtor, John Charles Van Fossan. After the hearing, the Court allowed the parties an opportunity to submit briefs regarding the pertinent legal issues.

### Findings of Fact

Based upon the evidence presented, the Court makes the following findings of fact. On August 20, 1987, the debtor filed a chapter 12 bankruptcy petition. The debtor's petition listed total debts as $723,-227.67. Schedule A-2 filed with the petition listed among the secured creditors a debt to Barbara Van Fossan, the debtor's former wife, in the amount of $295,000. The consideration listed for the debt was "divorce settlement."

Although the debtor's testimony at the hearing was conflicting, the Court finds for the most part, the testimony to be credible. At the hearing, the debtor, John Charles Van Fossan, corroborated the fact that the debt to Barbara Van Fossan had resulted from a Separation and Property Settlement Agreement executed at the time of the parties' separation and subsequent divorce. The Separation and Property Settlement Agreement, entered into evidence as Desser Aud Exhibit No. 2, further evidenced this fact. The debtor testified that the $295,000 debt to Barbara Van Fossan constituted more than 20% of the debtor's total debt amount of $723,227.67.

The debtor testified that he has been engaged in cattle and hay farming for the past 15 years. At the present time, the debtor has no cattle, having sold his last cattle in February 1987 with the proceeds going to FmHA. The debtor stated that he thought he could borrow money to purchase cattle in the future, but was not sure whether he would do so after fully assessing the market. The debtor noted that he did have a hay inventory with which to feed any cattle he might purchase or for purposes of sale consisting of 400 to 500 rolls cut in June and September 1987. The debtor could not provide a specific value, but stated that he assumed that the hay could be sold for about $25.00 per roll, depending upon the demand. He noted that he had agreed to pay a man who had "put the hay up" $10 per roll when the hay is sold. The debtor added that he had not had enough money to buy fertilizer, and therefore, could not anticipate the size of any future hay crops. The debtor also noted that although he had grown hay for a number of years, he has never sold hay before, but hoped that $20,000 to $30,000 could be realized.

The debtor testified that his gross income for 1985 ranged between $50,000 and $60,000. "About half" of that amount was received from farming. For 1986, the debtor stated that his gross income was about $75,000; $46,000 of which was received as the result of a land sale in Kansas City, Missouri, and $29,000 of which was received from farming. The debtor stated that the Missouri property had been zoned for agricultural purposes but that he had never used the property for farming purposes and had held the property only for speculative purposes. The debtor did not indicate specific farm income amounts attributable to the $29,000.

Prior to August 1986, the debtor received $1,897 per month from two men who were engaged in a partnership with him, George J. Reeves and Arthur F. Reeves, as payments toward the purchase of land which he sold the Reeves in 1977. The Reeves also paid approximately $950 per month directly to FmHA on the debtor's behalf. Calculating the monthly payments of $1,897 and $950 for eight months, the debtor's 1986 total income figure must have included approximately $22,776 ($15,176

paid directly to the debtor and $7,600 paid to FmHA) as payments by the Reeves toward the land purchase. When this amount is added to the $46,000 realized from the sale of the Missouri property, an amount less than the $29,000 amount stated by the debtor to be farm income remains. Therefore, the Court does not find the statement that the debtor received $29,000 in farm income for 1986 to be credible. However, for purposes of this opinion, the factual findings will suffice by stating that the debtor's 1986 farming income was an amount something less than $29,000 in view of the total gross income amount being $75,000.

Since August 1986, the debtor stated that he has had no income and has been borrowing money from relatives and friends to pay his living expenses. The debtor could not anticipate when he would next receive income, but stated that he hoped to receive the money owed by the Reeves. Both George J. Reeves and Arthur F. Reeves and their spouses have filed chapter 11 bankruptcy proceedings in New Mexico. The debtor noted that he was not aware of any steps which had been taken to collect any amounts owed by the Reeves, but that his attorney had made plans to actively pursue the debt for the benefit of his bankruptcy estate.

### Conclusions of Law

The issue of whether this Court has jurisdiction over the debtor's bankruptcy case involves a determination of whether the debtor qualifies to be a debtor under 11 U.S.C. Secs. 1201, *et seq.* In order to properly be a debtor under chapter 12, the debtor must be a family farmer with regular annual income. 11 U.S.C. Sec. 109(f). The Bankruptcy Code defines not only a "family farmer" but also a "family farmer with regular annual income." *See* 11 U.S.C. Sec. 101(17)(A), and (18), *respectively.*

■ Section 101(17)(A) provides:

"[F]amily farmer" means individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate non-contingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual['s] and spouse['s] gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed. . . .

11 U.S.C. Sec. 101(17)(A). For purposes of determining a debtor's gross income, the term is given the same meaning as that given for tax purposes. *In re Wagner*, 808 F.2d 542 (7th Cir.1986); *In re Faber*, 78 B.R. 934 (Bankr.S.D.Iowa, 1987).

■ A "farming operation" is defined in 11 U.S.C. Sec. 101(20). Section 101(20) provides " 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." The definitional provisions of a "farming operation," as outlined in Sec. 101(20) are not exclusive. *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987); *In re Martin*, 78 B.R. 593 (Bankr.D.Mont. 1987). The underlying nature of the debts may be examined to determine whether the debts actually arose out of a "farming operation" for purposes of both the 80% debt test and the 50% income test of Sec. 101(17)(A).

The *Armstrong* case is often cited for the interpretation of a "farming operation." In *Armstrong*, the Seventh Circuit Court of Appeals determined that the definition of a "farming operation" does not provide "a simple all-inclusive list of tasks and activities . . . [and] [i]mplicit in this definition is the inclusion of general activities inherent in farming." 812 F.2d at 1026. The Court then determined that rental income from farm land which the

debtor rented to others was not income from a farming operation. The Court noted that the collection of rent in this case was not a "risk-laden venture in the nature of farming." *Id.* at 1027. The Court did find that income from sale of farm machinery was farming income from a farming operation. *Id.*

Other cases have examined factors as enunciated in the *Armstrong* holding. However, a determination of whether certain debts constitute income from a farming operation involve an examination of the facts and circumstances of each case. *See In re Wagner,* 808 F.2d 542 (7th Cir.1986) (distribution from IRA not included as income from a farming operation); *In re Bergmann,* 78 B.R. 911 (Bankr.S.D.Ill. 1987) (debtors did not qualify as family farmers under chapter 12 proceeding where tax returns for the year immediately preceding the year petition filed showed less than 50% of their income came from farming operations); *In re Faber,* 78 B.R. 934 (S.D.Iowa, 1987) (debtors did not satisfy 50% income test of 11 U.S.C. Sec. 101(17)(A) in that income was derived not only from farming operations but also trucking operations); *In re Haschke,* 77 B.R. 223 (Bankr.D.Neb.1987) (rental payments received from lease of agricultural property not farm income for purposes of 11 U.S.C. Sec. 101(17)(A); determination made that collection of rent was not a risk-laden venture in the nature of farming); *but see In re Greseth,* 78 B.R. 936 (D.Minn.1987) (real estate taxes paid as part of a debtor-daughter's acquisition of a farming operation upon the death of her mother arose out of a farming operation); *In re Rinker,* 75 B.R. 65 (Bankr.S.D.Iowa 1987) (income received from a will settlement to determine title to farm land which arose from a farming operation).

In addition to meeting the requirements of Sec. 101(17)(A), the debtor must also meet the requirements of Sec. 101(18). Section 101(18) provides:

> "[F]amily farmer with regular annual income" means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title.

11 U.S.C. Sec. 101(18). Only one case has interpreted Sec. 101(18). *In re Hoskins,* 74 B.R. 51 (Bankr.C.D.Ill.1987), noted that the requirements of Sec. 101(18) are comparable to the chapter 13 requirements of 11 U.S.C. Sec. 101(29) and applied a chapter 13 test to determine whether a debtor could use various sources of income to fund a chapter 13 plan. 74 B.R. at 53.

■ In view of the facts presented and the applicable law, the Court concludes that it does not have jurisdiction over the debtor's bankruptcy proceeding. The debtor does not qualify for chapter 12 relief under the provisions of 11 U.S.C. Sec. 101(17)(A) as a "family farmer" in that eighty percent of the debtor's aggregate non-contingent, liquidated debts on the date the case was filed did not arise out of a farming operation as defined in 11 U.S.C. Sec. 101(20). Further, the debtor did not receive more than fifty percent of his gross income for 1986, the preceding taxable year, from a farming operation. The debtor also does not qualify for chapter 12 relief in that the debtor is not a family farmer whose annual income is sufficiently stable and regular to enable him to make payments under a chapter 12 plan pursuant to 11 U.S.C. Sec. 101(18).

The debtor has argued that the $295,000 debt to Barbara Van Fossan was in the nature of a debt which arose from a farming operation. At the hearing, the debtor testified that the debt owed to Barbara Van Fossan arose from a divorce settlement. In examining the underlying circumstances of the debt, the Court may reasonably conclude that the debt did not arise from a farming operation. The debt arose at the time of the parties' divorce as part of a distribution of marital property. The debt was not incurred as a result of a risk or activity involved in a farming operation as defined in 101(20). The debt owed Barbara Van Fossan constitutes greater than 20% of the debtor's aggregate non-contingent liquidated debts. Therefore, the debtor fails to meet the test for eligibility as a chapter 12 debtor in which 80% of his aggregate non-contingent liquidated debts arise from a farming operation.

The debtor's gross income for the 1986 year, viewed even in a light most favorable to the debtor, prevents eligibility for chapter 12 relief. The debtor's gross income for the 1986 year totalled $75,000. The amount of $46,000 was realized from sale of real property which the debtor admitted was not used for farming purposes. This amount, therefore, could not have arisen out of a farming operation. Further, any income received from the Reeves in the amount of payments of $1,897 per month to the debtor or $950 per month to the FmHA on the debtor's behalf for eight months also could not have been income which arose pursuant to a farming operation. The debtor earned less than $29,000 from his farming operations. Simple mathematics demonstrate that this amount is less than 50% of the debtor's $75,000 gross income for the 1986 year. The debtor fails to meet the test that he received more than fifty percent of his income from a farming operation preceding the taxable year in which the case was filed.

At the hearing, the debtor could not indicate to the Court when he next expected income, but chose to rely upon the possibility that he might receive money owed to him from the Reeves at some indefinite time. The debtor noted that current living expenses were being met by loans from family and friends. The debtor also noted that he expected income to be received from a new venture for him, the sale of hay. The debtor could only project anticipated income from hay sales, which he stated depended upon the market. The debtor also could not indicate to the Court any definite plans for cattle farming for the future period.

Although chapter 12 relief does not require a debtor to have a regular monthly income, the Bankruptcy Code does require that a debtor's annual income be "sufficiently stable and regular to enable such family farmer to make payments under a plan...." 11 U.S.C. Sec. 101(18). The Court can find no income to be received by the debtor which could be considered sufficiently stable or regular to fund a chapter 12 plan. In fact, the prospects for the immediate future for the debtor to receive any income appear to be dismal. The Court finds that the debtor fails to meet the test of a family farmer with regular income for chapter 12 purposes.

An Order consistent with this Memorandum Opinion will be entered of even date.

### ORDER

Based upon the Memorandum Opinion of even date, the Court finds that the debtor, John Charles Van Fossan, fails to meet the definition of a "family farmer" as established in 11 U.S.C. Sec. 101(17)(A). The debtor also fails to meet the definition of a "family farmer with regular income" as established in 11 U.S.C. Sec. 101(18). The Court finds that the chapter 12 petition filed by the debtor should be and is hereby dismissed.

IT IS SO ORDERED.